# IN THE SUPREME COURT OF TEXAS

══════════
No. 11-0429
══════════

CHARLES MANBECK, PETITIONER,

v.

AUSTIN INDEPENDENT SCHOOL DISTRICT, RESPONDENT

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════════

**PER CURIAM**

In this workers' compensation case, the Austin Independent School District (AISD) argues that it is immune from an award of attorney fees granted to its injured employee. We agree and accordingly reverse in part the judgment of the court of appeals.

Charles Manbeck, an AISD employee, injured himself on the job while tightening a door closer. AISD, a self-insured governmental entity deemed an "insurance carrier" under the Texas Workers' Compensation Act (Act), *see* TEX. LAB. CODE § 401.011(27), acknowledged that Manbeck had been injured but disputed whether the compensable injury extended to two alleged conditions pertaining to Manbeck's back and right shoulder.

The case proceeded through an administrative phase under the Act. A benefit review conference failed to resolve the dispute, *see id.* §§ 410.021–.034, and the case proceeded to a contested case hearing, *see id.* §§ 410.151–.169. The hearing officer sided with Manbeck on the

contested issues. AISD sought review before the administrative appeals panel, *see id.* §§ 410.201–.209, which also sided with Manbeck. AISD then sought judicial review of the panel's decision. *See id.* §§ 410.251–.258. In the district court, Manbeck filed a counterclaim seeking attorney fees under Section 408.221(c) of the Act, which provides: "An insurance carrier that seeks judicial review . . . of a final decision of the appeals panel . . . is liable for reasonable and necessary attorney's fees . . . incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier . . . ."

AISD filed a nonsuit in the trial court, leaving only the counterclaim for fees. The case was tried to a jury, and Manbeck won a judgment on the verdict that included $36,000 for fees incurred in the trial court prior to the nonsuit, $17,415 for fees incurred in the trial court after the nonsuit, and contingent appellate fees. AISD appealed, arguing to the court of appeals that (1) the evidence was factually and legally insufficient to support the pre-nonsuit fee award, and (2) the post-nonsuit fee award could not stand because the attorney fee statute did not provide for an award of "fees for fees," that is, fees incurred in the pursuit of fees. The court of appeals rejected the first argument but agreed with the second argument. 338 S.W.3d 147, 149, 161. AISD brought a petition for review in the Supreme Court, arguing for the first time that governmental immunity from suit barred the award of attorney fees.

Manbeck contends that AISD has waived its defense of governmental immunity by failing to raise the defense in the trial court or the court of appeals. Raising the defense at the earliest opportunity is certainly a preferred practice. However, we recognize today in *Rusk State Hospital v. Black*, ___ S.W.3d ___, that the defense of sovereign immunity from suit sufficiently implicates

2

subject matter jurisdiction to conclude that the defense may be raised for the first time on appeal, regardless of whether sovereign immunity equates to subject matter jurisdiction for all purposes. Consistent with *Rusk State Hospital*, we conclude that AISD may assert its governmental immunity on appeal in this Court.

Reaching the merits of the immunity question, we must agree with AISD that it is immune from Manbeck's claim for attorney fees. The fee-shifting provision applies to governmental entities, if at all, under the Political Subdivisions Law, codified as Chapter 504 of the Labor Code, TEX. LAB. CODE §§ 504.001–.073. Section 504.002(a) makes portions of the Workers' Compensation Act applicable to certain political subdivisions, including school districts, *see id.* § 504.001(3), by providing a list of provisions of the Act that apply to political subdivisions. Section 504.002(b) provides that, as to this list of "adopted" provisions, *see Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 56 (Tex. 2011), a political subdivision is deemed an "employer" under the Workers' Compensation Act. The Political Subdivisions Law, however, is qualified. Section 504.002(a) provides that the provisions of the Act apply to the list of adopted provisions "except to the extent that they are inconsistent with this chapter." Section 504.002(c) provides that "[n]either this chapter nor [the Workers' Compensation Act] authorizes a cause of action or damages against a political subdivision . . . beyond the actions and damages authorized by" the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. Further, Section 504.053(e) provides that "[n]othing in this chapter waives sovereign immunity or creates a new cause of action."

The list of adopted provisions in Section 504.002 includes Chapter 408, the chapter containing the attorney fee provision at issue. TEX. LAB. CODE § 504.002(a)(6). The issue before

us is whether inclusion of the attorney fees provision in the list of adopted provisions set out in the Political Subdivisions Law amounts to a waiver of governmental immunity from such fees. The answer is no.

A similar issue arose in *City of La Porte v. Barfield*, 898 S.W.2d 288 (Tex. 1995). We addressed whether the retaliatory discharge provision of the Workers' Compensation Act applied to governmental entities. As with the attorney fee provision at issue in today's case, the retaliatory discharge provision was an adopted provision listed in the Political Subdivisions Law. We held that in light of the requirement that a waiver of governmental immunity must be clear and unambiguous, inclusion of the provision in the list of adopted provisions was not sufficient by itself to waive governmental immunity. We stated that "adoption of the Anti-Retaliation Law . . . does not express a clear intent to waive immunity," *id.* at 295, in part because adoption of the provision in the Political Subdivisions Law gave no clearer indication of legislative intent to waive immunity than adoption of an exemplary damages provision at issue in a prior decision where we had rejected a similar waiver argument. *Id.* at 296 (discussing *Duhart v. State*, 610 S.W.2d 740 (Tex. 1980)); *see also Norman*, 342 S.W.3d at 58 ("We concluded in *Barfield* that this incorporation was, without more, an insufficient expression of the government's intent to waive immunity."). But we ultimately concluded in *Barfield* that another provision found in the Political Subdivisions Law, TEX. LAB. CODE § 504.003, an election of remedies provision specific to retaliatory discharge claims, provided sufficient additional indication of legislative intent to conclude that the Legislature had waived immunity. "This election of remedies provision . . . persuades us, in the end, that the Legislature must have intended to waive political subdivisions' immunity for liability imposed by the Anti-

4

Retaliation Law." *Barfield*, 898 S.W.2d at 298. However, we also considered the effect of the language in the Political Subdivisions Law indicating that it did not authorize causes of action or damages against a political subdivision beyond those authorized by the Tort Claims Act. *Id.* at 297. As noted above, this limitation remains in the current version of the Political Subdivisions Law. We held that a "literal reading" of this language presented some "difficulties," but also concluded that "it cannot be ignored completely." *Id.* at 298–99. We ultimately held that this language referencing the Tort Claims Act at a minimum precluded exemplary damages and capped actual damages in the same manner that such damages are limited by the Tort Claims Act. *Id.* at 299.

Under *Barfield*, Manbeck's claim for attorney fees is barred by governmental immunity. As *Barfield* holds, the inclusion of Chapter 408—the chapter containing the attorney fee provision—in the Political Subdivisions Law's list of adopted provisions is not sufficient by itself to waive governmental immunity. Further, *Barfield* indicates that the remedies available to a claimant under the Political Subdivisions Law are limited to those available under the Tort Claims Act, which does not provide for an award of attorney fees. *See Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 448 (Tex. 1994) (Gonzalez, J., concurring in part and dissenting in part) (noting that "the Texas Tort Claims Act does not expressly provide for the recovery of fees and costs, and no court has awarded them to a plaintiff under the Act"); *State Office of Risk Mgmt. v. Davis*, 315 S.W.3d 152, 154 (Tex. App.—El Paso 2010, pet. denied) (holding attorney fees unavailable in workers' compensation case because "the Texas Tort Claims Act does not expressly provide for the recovery of attorney's fees"). Moreover, *Barfield* held that a claim for limited relief was available under the retaliatory discharge provision only because the Political Subdivisions Law had an election of remedies provision specific

5

to retaliatory discharge claims which indicated legislative intent to waive immunity. No similar provision of the Political Subdivisions Law applies to Manbeck's claim for attorney fees. In short, if *Barfield* were the final word, Manbeck's claim for attorney fees would fail.

This result is all the more compelled by our later decision in *Travis Central Appraisal District v. Norman*, 342 S.W.3d 54 (Tex. 2011), where we revisited the issue of whether a retaliatory discharge claim could be lodged against a governmental entity. We held that *Barfield* was no longer good law in light of a subsequent amendment to the Political Subdivisions Law. We noted that in 2005 a new provision, TEX. LAB. CODE § 504.053(e), was added to the Political Subdivisions Law, providing that "[n]othing in this chapter waives sovereign immunity or creates a new cause of action." We first noted that this "no-waiver provision" was a "broadly-worded provision" applying to all of Chapter 504. 342 S.W.3d at 57. We held that it applied to both sovereign and governmental immunity, the latter protecting political subdivisions including school districts. *Id.* at 57–58. We then concluded this provision had so "muddled the issue" of immunity that we could no longer hold that the waiver of immunity with respect to wrongful discharge claims was clear and unambiguous. *Id.* at 59. Instead, we concluded that "the current version of the Political Subdivisions Law is too internally inconsistent to satisfy that standard." *Id.*

As compelled by *Norman*, the current Political Subdivisions Law does not clearly and unambiguously waive governmental immunity against Manbeck's claim for attorney fees. As in *Norman*, the remedies provision on which the claimant relied, and its inclusion in the Political Subdivision's list of adopted provisions, occurred prior to 2005. The fee-shifting provision of Chapter 408 on which Manbeck relies was enacted in 2001. Act of May 25, 2001, 77th Leg., R.S.,

6

ch. 1456, § 8.01, sec. 408.221(c), 2001 Tex. Gen. Laws 5167, 5189. Chapter 408 has been included in the list of adopted provisions under Chapter 504 of the Labor Code—the codified version of the Political Subdivisions Law—since the Labor Code was enacted in 1993. Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, sec. 504.002(6), 1993 Tex. Gen. Laws 987, 1250. In 2005, the anti-waiver provision set out in Section 504.053(e) was enacted, leading us to conclude in *Norman* that, even with the benefit of an election of remedies provision supporting a waiver of immunity and not available in today's case, the Political Subdivisions Law had simply become too "internally inconsistent" to meet the standard of a clear and unambiguous waiver of immunity. Manbeck's claim, therefore, must fail under *Norman* even if it were cognizable under *Barfield*.

Manbeck contends that AISD, by bringing this suit, cannot avail itself of governmental immunity. AISD brought this suit as part of the review process under the workers' compensation regime, but it never sought affirmative relief. The suit was brought to challenge Manbeck's award secured in the administrative phase of the process.

We explored the manner in which a governmental entity's assertion of its own affirmative claim affects its immunity from suit in two recent cases. In *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006), we held that when a governmental entity asserts an affirmative claim for monetary damages against its opponent, the entity "does not have immunity from [the opponent's] claims germane to, connected to, and properly defensive to claims asserted by [the governmental entity], to the extent any recovery on those claims will offset any recovery by [the governmental entity] from [its opponent]." *Id.* at 378. We noted that we usually defer to the Legislature to waive immunity, *id.* at 375, and repeatedly made clear that the rule we were adopting

7

was narrow and carefully tailored, and applicable only when the governmental entity asserts an affirmative claim for monetary damages, *id.* at 375–78. In *City of Dallas v. Albert*, 354 S.W.3d 368 (Tex. 2011), we followed the rule we adopted in *Reata*, and recognized that this rule is limited to cases where the governmental entity asserts an affirmative claim for monetary relief against which the opponent's claims can be offset. *Id.* at 373–75.

*Reata* and *Albert*, our latest decisions on the effect of litigation conduct on governmental immunity, do not fit the facts of today's case. AISD never brought an affirmative claim for money damages against which Manbeck's claims could be offset. AISD instead merely availed itself of its statutory right to challenge Manbeck's award of monetary relief by pursuing an appeal of the administrative decision to district court. We hold that AISD's decision to challenge in court the administrative award of benefits to Manbeck did not result in a loss of AISD's governmental immunity from Manbeck's claim for attorney fees.

For these reasons, we affirm the court of appeals' judgment insofar as it reversed the trial court's award of attorney fees incurred after the nonsuit and the trial court's award of contingent appellate attorney fees. We reverse the court of appeals' judgment insofar as it affirmed the trial court's award of attorney fees incurred prior to the nonsuit.

**OPINION DELIVERED:** August 31, 2012