

# NUMBER 13-11-00460-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TEXAS DEPARTMENT OF TRANSPORTATION,**     **Appellant,**

**v.**

**ROBYN WOMAC,**     **Appellee.**

---

### On appeal from the 361st District Court
### of Brazos County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

This is an appeal by the Texas Department of Transportation (the Department) from a jury verdict in favor of appellee Robyn Womac in which Womac was awarded damages for injuries she incurred in a bicycle accident on a road in College Station, Texas. By three issues, the Department argues that: its sovereign immunity from

Womac's suit was not waived because (1) the road condition that caused Womac's accident was not a special defect or (2) a premises defect of which the Department had actual knowledge; and (3) the jury's finding that the Department knew or should have known of the road condition was not supported by sufficient evidence. We affirm.

## I. Background[1]

On the night of June 17, 2008, Womac crashed her bicycle after riding over a hole in the bicycle lane of George Bush Drive in College Station, Texas. Womac suffered a broken right clavicle from the accident. Womac filed suit against the Department under the Texas Tort Claims Act (TTCA), alleging that the area of the road she rode over was in an unreasonably dangerous condition and constituted a premises defect and special defect caused by the Department's negligence.

Womac's claims were tried to a jury, which returned a verdict in her favor and assessed damages totaling $332,735.57, including damages for past and future physical pain, impairment, and disfigurement, medical expenses, and lost wages. The trial court applied the statutory cap to the jury's award and issued a final judgment to Womac for $250,000. This appeal followed.

## II. Sovereign Immunity

By its first two issues, the Department argues that it is immune from Womac's suit because the complained-of road condition did not constitute a special defect or a premises defect of which the Department had actual knowledge.

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

When the determination of an immunity issue involves jurisdictional facts, we review evidence relevant to those jurisdictional facts in making our immunity determination. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 414 (Tex. 2008) (per curiam). Although the Department did not raise its immunity from suit before the trial court,[2] we still address this issue as sovereign immunity may be raised for the first time on appeal. *See Manbeck v. Austin Indep. Sch. Dist.*, No. 11-0429, 2012 WL 3800876, at *1 (Tex. Aug. 31, 2012) ("[T]he defense of sovereign immunity from suit sufficiently implicates subject matter jurisdiction . . . that the defense may be raised for the first time on appeal."). We note that, "when the jurisdictional issues were not raised in the trial court,"

> a plaintiff may not have had fair opportunity to address jurisdictional issues by amending its pleadings or developing the record . . . . Under such circumstances appellate courts must construe the pleadings in favor of the party asserting jurisdiction, and, if necessary, review the record for evidence supporting jurisdiction.

*Rusk State Hosp. v. Black*, No. 10-0548, 2012 WL 3800218, at *6 (Tex. Aug. 31, 2012).

## A.   Applicable Law

The State's sovereign immunity is waived for suits based on either (1) special defects in the State's premises that the State knew or should have known of and failed to warn of or make safe, or (2) regular premise defects that constitute an unreasonably dangerous condition that the State had actual knowledge of and failed to warn of or make safe. *Reyes v. City of Laredo*, 335 S.W.3d 605, 606-07 (Tex. 2010) (per curiam); *Tex.*

---

[2] Although the Department pled sovereign immunity as a defense in its answer to Womac's suit, it did not file a plea to the jurisdiction or otherwise urge immunity at any point during the trial court proceedings. We note that "[r]aising the [sovereign immunity] defense at the earliest opportunity is certainly a preferred practice." *Manbeck v. Austin Indep. Sch. Dist.*, No. 11-0429, 2012 WL 3800876, at *1 (Tex. Aug. 31, 2012).

*Dept. of Transp. v. York*, 284 S.W.3d 844, 846-47 (Tex. 2009); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (West 2011).

> The [TTCA] does not define "special defect," but does give guidance by likening special defects to "excavations or obstructions." *See* TEX. CIV. PRAC. & REM. CODE § 101.022(b). Thus, "[u]nder the ejusdem generis rule, we are to construe 'special defect' to include those defects of the same kind or class as [excavations or obstructions]." *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978). While these specific examples "are not exclusive and do not exhaust the class," the central inquiry is whether the condition is of the same kind or falls within the same class as an excavation or obstruction. *Id.*; *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997) (per curiam). A special defect, then, cannot be a condition that falls outside of this class. *See* [*State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238-39 n.3 (Tex. 1992)] ("[T]o the extent [courts] classify as 'special' a defect that is not like an excavation or obstruction on a roadway, we disapprove of them."); *Eaton*, 573 S.W.2d at 179 ("The statutes provide an under-standing of the kinds of dangerous conditions against which the [L]egislature intended to protect the public. They are expressed as such things 'as excavations or roadway obstructions.'").

*York*, 284 S.W.3d at 847. Specifically, the supreme court has

> described the class of conditions intended by the statute as those which, because of their size or "some unusual quality outside the ordinary course of events," *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam), pose "'an unexpected and unusual danger to ordinary users of roadways.'" [*York*, 284 S.W.3d at 847] (quoting *Payne*, 838 S.W.2d at 238).

*Reyes*, 335 S.W.3d at 607. Whether a condition is a special defect involves statutory interpretation and is therefore a question of law. *Payne*, 838 S.W.2d at 238.

To waive the government's immunity for a regular premises defect claim, the plaintiff must show that there was an unreasonably dangerous condition that the government knew of and the plaintiff did not and that the government failed to either warn of or make safe the condition. *Univ. of Tex. v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010). The plaintiff must show that the government had actual knowledge of the condition;

4

constructive knowledge is not enough. *City of Dallas v. Thompson*, 210 S.W.3d 601, 602-03 (Tex. 2006) (per curiam). "[T]he actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *Id.* at 603; *see Stewart*, 249 S.W.3d at 413-14. A plaintiff may establish the government's actual knowledge through circumstantial evidence. *City of Irving v. Seppy*, 301 S.W.3d 435, 444 (Tex. App.—Dallas 2009, no pet.). But "[c]ircumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion." *Stewart*, 249 S.W.3d at 415 (citations omitted).

## B. Special Defect

By its first issue, the Department argues that the road condition that caused Womac's accident was, as a matter of law, not a special defect. We agree.

The record contains evidence that the road condition that caused Womac's accident was caved-in concrete surrounding two drain covers near the curb of the bicycle lane. Photographs admitted at trial show that the caved-in area begins at the curb and extends approximately two feet into the bicycle lane; the deepest part of the cave-in appears to be four to five inches. The photographs also show an approximately one-foot piece of rebar protruding from the caved-in concrete; the tip of the rebar extends several inches above the surface of the road. The cave-in spans approximately one-third of the bicycle lane; there is an approximately four to five feet area of undamaged roadway between the cave-in and the line marking the boundary between the bicycle lane and the roadway. There was testimony at trial that Womac rode this path every day.

5

Under the facts of this case, we believe that the caved-in area does not constitute a special defect. The determination of whether a particular road condition is unexpected and unusual and, thus, a special defect "turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *See Hayes*, 327 S.W.3d at 116 (quoting *Denton County v. Beynon*, 283 S.W.3d 329, 332 (Tex. 2009)). Ultimately, however, the unexpectedness or unusualness of a defect is not a relevant factor if the defect is not of the same class as excavations or obstructions as contemplated by the statute. *See York*, 284 S.W.3d at 847 ("[T]he central inquiry is whether the condition is of the same kind or falls within the same class as an excavation or obstruction.") (citing *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)); *Beynon*, 283 S.W.3d at 332 ("[T]he TTCA does not posit an alternative basis for special-defect liability when a condition, while not an excavation or obstruction, is out of the ordinary."). The caved-in area here was only four or five inches deep and about two feet wide. It comprised only a small portion of the bicycle lane and could have been avoided by riding in the four- to five-foot undamaged portion of the lane. In light of the foregoing, we cannot conclude that the defect here is the sort of excavation or obstruction contemplated by the statute. It was relatively small and did not physically impair Womac's ability to travel in the bicycle lane. *See York*, 284 S.W.3d at 847; *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam). Neither can we conclude that an ordinary user of the bicycle lane would have found the defect to be unusual or unexpected in the normal course of travel. *See Hayes*, 327 S.W.3d at 116; *see also Hindman v. State Dep't of Highways & Pub. Transp.*, 906 S.W.2d 43, 46 (Tex. App.—Tyler 1994, writ denied) (stating that special defects do

6

not include "every pothole or bump encountered on a public highway in Texas capable of upsetting a cyclist"); *City of Dallas v. Hughes*, 344 S.W.3d 549, (Tex. App.—Dallas 2011, no pet.) (holding that a reasonable bicyclist should expect imperfections and other variations in a bicycle path).

Our analysis is supported by a recent case handed down by the Texas Supreme Court. In *City of Denton v. Paper*, the plaintiff sued the City of Denton for injuries she sustained when she was thrown over the handlebars of her bicycle after riding over a hole in her residential street. No. 11-0596, 2012 WL 3537810, at *1 (Tex. Aug. 17, 2012) (per curiam). The supreme court held that the pencil-length deep sunken area the plaintiff rode over, which was located several feet into the right lane of the street from the curb, was not a special defect. *Id.* at *3-4. In so holding, the court stated:

> We have held . . . that variations in public roadways of a few inches are not the same as the excavations or obstructions mentioned in the Act. *See, e.g.*, [*City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam)]; *City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (per curiam) (holding that a worn or depressed area of a sidewalk approximately three feet by six feet in size with a depth of three inches was not a special defect). Similarly, the sunken area or pot hole here, ranging from two inches to a few inches more at its deepest point and located in the center of one lane of traffic is not the excavation or obstruction contemplated by the statute.

*Id.* at *3. The court further stated that "ample room existed for a bicycle to navigate around this hole without having to enter the opposing traffic lane," concluding that the plaintiff's ability to travel on the road was not physically impaired and that such an irregularity on the road should have been expected. *Id.* at *3-4.

Like the road defect in *Paper*, the defect in the bicycle lane in this case was only a few inches deep. And like the area around the hole in the roadway in *Paper*, there was

7

ample room in the bicycle lane in this case in which Womac could have navigated around the hole without driving into car traffic. The defect in this case is indistinguishable from the defect in *Paper*.

In sum, having viewed the evidence in the record in the light most favorable to the party asserting jurisdiction, *see Rusk State Hosp.*, 2012 WL 3800218, at *6, we conclude that the road condition that caused Womac's bicycle accident was not, as a matter of law, a special defect as described by the TTCA and contemplated by the case law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022; *York*, 284 S.W.3d at 847. The Department's immunity was not waived on this basis. We sustain the Department's first issue.

## C. Actual Awareness

By its second issue, the Department argues that because the hole in the bicycle lane was not a special defect but merely a regular premises defect, Womac was required to show that the Department had actual knowledge of the condition. The Department argues that Womac failed to make this showing. We disagree.

Photographs of the accident scene admitted at trial show a black, tar-like material in the cave-in. Womac's father testified that he took the photographs a week after Womac's accident, but his testimony established that the condition of the bicycle lane depicted in the photographs taken a week after the accident matched photographs Womac had taken and sent to him the morning after the accident.

Testimony by several Department maintenance employees established that the black material in the photographs is a sealant used in the process to repair cracks in the roadway. The crack-sealing process was described by one employee as follows:

8

[Counsel for Womac]: And how would you go about doing a crack seal repair?

[Maintenance Employee]: Go through with the air compressor and blow out the cracks and all the dirt. Then you lay over.

[Counsel for Womac]: So going by a step-by-step process, you actually blow out the crack first?

[Maintenance Employee]: Yes.

. . . .

[Counsel for Womac]: And is that with a wand-type instrument?

[Maintenance Employee]: Yes, it's like a pipe attached to an air hose.

[Counsel for Womac]: And then someone follows with the beading type material?

[Maintenance Employee]: Crack seal?

[Counsel for Womac]: Crack seal.

[Maintenance Employee]: Yes, sir.

[Counsel for Womac]: Is that also a wand?

[Maintenance Employee]: Yes, sir.

[Counsel for Womac]: Okay. And does someone walk literally along the cracks and blow them out?

[Maintenance Employee]: Yes, sir.

[Counsel for Womac]: And then someone — either the same person or someone else walks along with the bead-type material —

[Maintenance Employee]: Yes, sir, they're behind a good ways, the crack seal behind the air compressor a little ways.

[Counsel for Womac]: And is that typically a different person that does

9

the beading?

[Maintenance Employee]:    Yes, sir.

[Counsel for Womac]:    And then as I believe the previous witness described, does someone come along and squeegee the material after that?

[Maintenance Employee]:    Yes.

[Counsel for Womac]:    So if we see crack seal material on the ground in a certain location, can we assume that someone came through with an air gun-type device and blew out the area?

. . . .

[Maintenance Employee]:    Yes, sir.

[Counsel for Womac]:    And then we can also assume that another employee . . . would come through and put down the bead-type material, correct?

[Maintenance Employee]:    Yes, sir.

[Counsel for Womac]:    And then a third, or maybe a third and a fourth would come through and actually squeegee the material into the crack?

[Maintenance Employee]:    Yes, sir, just to smooth it out.

The employee then testified that every employee involved in this process would be looking down and scanning the area for other problems. Another employee later testified more specifically about the crack sealant in the cave-in:

[Counsel for Womac]:    Would you agree with me that there is crack seal material all around the [caved-in area]?

[Maintenance Employee]:    Yes.

[Counsel for Womac]:    How did that crack seal material get there?

10

[Maintenance Employee]: I guess we put it there.

[Counsel for Womac]: Okay.

[Maintenance Employee]: I wasn't there at that time, so I'm not sure if we put it there or, you know —

[Counsel for Womac]: Well, would anybody have put it there other than a [Department] employee?

[Maintenance Employee]: No.

[Counsel for Womac]: Don't many people go out —

[Maintenance Employee]: No.

[Counsel for Womac]: — and do that sort of thing. So can we also assume if the crack seal was laid pursuant to the policy or the steps that we discussed before that a bunch of people, number one, with some type of air gun was going through here; number two, material beaded; and then someone squeegeeing it after that?

[Maintenance Employee]: Yes.

. . . .

[Counsel for Womac]: And all these people are looking down as they're doing that?

[Maintenance Employee]: Yes, sir.

[Counsel for Womac]: And looks like we have tar material inside the hole; would you agree with me?

[Maintenance Employee]: Yes.

[Counsel for Womac]: The person who is walking along squeegeeing this material should have seen the hole?

[Maintenance Employee]: Yes.

. . . .

11

[Counsel for Womac]: Can you think of any way that this tar would have gotten there if it wasn't squeegeed in that process we described?

[Maintenance Employee]: No, sir.

[Counsel for Womac]: So some employee of [the Department] following the procedures that you discussed knowingly pushed this material, this crack seal material into a dangerous condition?

[Maintenance Employee]: Yes.

We believe that the foregoing is circumstantial evidence that the Department had actual knowledge of the cave-in that caused Womac's accident. The photographs and testimony by road maintenance employees about the crack-sealing process and the presence of the crack seal in this cave-in, in particular, establish circumstantially that at least three employees observed the hole in the bicycle lane in this case—one used an air compressor to blow the dirt and other debris out of the crack, one put down the crack sealant, and one squeegeed it into the hole. The Department suggests that because no employee who testified at trial could say that he, personally, had ever seen the cave-in in this case, Womac cannot prove the Department's actual knowledge. But actual knowledge may be established by circumstantial evidence. *Seppy*, 301 S.W.3d at 444. And it defies logic to suggest that the employees who performed the repairs to the area immediately surrounding the cave-in did not see the hole into which the crack sealant was pushed. According to the testimony of the Department employees at trial, whichever Department employees who performed the repairs were looking down while they performed their work, and in order for crack sealant to be present in the hole, it must have

12

been pushed into the hole. The only reasonable inference from all of the foregoing is that the employees performing the repairs saw the hole. In other words, it is of no consequence that the employees testifying at trial did not personally observe the hole—the evidence establishes that some other Department employees must have seen the hole, which imputes actual knowledge to the Department. *See Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 67, 71 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that evidence of the actual knowledge of the alleged defect by a governmental employee is sufficient to raise a fact issue on the governmental unit's actual knowledge); *Simons v. City of Austin*, 921 S.W.2d 524, 528 (Tex. App.—Austin 1996, writ denied) (same).

The Department argues that the testimony about the crack sealant is not sufficient to show its actual knowledge of the condition because the same witnesses also testified that they would never have used crack sealant to repair this type of hole in the road. The Department also points to testimony that the crack sealant is at a very hot temperature when it is put down and it is possible that it could have flowed into the hole. But this testimony does not negate the above testimony that, in order for the crack sealant to be present in the hole, an employee of the Department must have knowingly pushed the crack sealant into the hole. At the most, there was conflicting testimony by the Department employees at trial. However, we are required to view the evidence in the light most favorable to Womac. *See Rusk State Hosp.*, 2012 WL 3800218, at *6.

The Department also argues that the crack sealant evidence is not sufficient evidence of actual knowledge because it does not establish the Department's knowledge of the condition at the time of Womac's accident. The Department argues that the

13

photographs only serve to show what the hole looked like after the accident. The testimony of Womac's father established that the photos he took the week after accident depicted the condition of the road at the time of the accident. We believe that this testimony, combined with the testimony that the only way crack sealant would have been present in the hole is if it had been pushed into the hole during that process, constituted sufficient circumstantial evidence that Department employees had actual knowledge of the condition of the hole as it appeared in the photographs. In other words, there was evidence that the hole as depicted in the photographs existed at the time the employees pushed the crack sealant into it, and the employee's observation of the hole at that time imputed actual knowledge of the condition to the Department. As stated above, the jury could have reasonably inferred from the foregoing circumstantial evidence that the Department had actual knowledge of the dangerous condition.

Finally, the Department argues that Womac failed to prove actual knowledge because there was no evidence that the Department had received any reports of the dangerous condition in the three years preceding Womac's accident. But reports of a dangerous condition are but one factor courts consider in assessing whether the government had actual knowledge of a complained-of condition. *See Hayes*, 327 S.W.3d at 118 (citing *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam)). And in light of the circumstantial evidence that Department employees had actual knowledge of the hole in the bicycle lane, we cannot conclude that the lack of reports about the hole is dispositive of this issue.

Having viewed the evidence at trial in the light most favorable to the party asserting

14

jurisdiction, we conclude that Womac established the Department's actual knowledge of the hole in the bicycle lane. *See Stewart*, 249 S.W.3d at 414. The Department's immunity to Womac's premises defect claim was therefore waived. *See Reyes*, 335 S.W.3d at 606-07; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022. We overrule the Department's second issue.

### III. Insufficient Evidence

By its third issue, the Department argues that the evidence at trial was legally and factually insufficient to establish that the Department knew or should have known of the condition. Again, we disagree.

We will sustain a legal-sufficiency or no-evidence challenge if the record shows: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). When reviewing a no-evidence challenge, we view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Id.* at 807. The ultimate test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to make the finding under review. *Id.* at 827.

In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence

15

and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469-70 (Tex. App.—Corpus Christi 2008, pet. denied).

The jury was charged as follows with regard to liability:

With respect to the condition of the roadway at the site of the accident, the [the Department] would not be negligent unless it is shown by a preponderance of the evidence that:

1) there existed a condition that posed an unreasonable risk of harm for ordinary users of the roadway in question;

2) [The Department] knew or should have known of such dangerous condition;

3) Robyn Womac did not have knowledge of the dangerous condition, if any;

4) That [the Department], within a reasonable time after it knew or should have known of such condition, both failed to warn of the condition and failed to make the condition safe.

Did the negligence, if any, of [the Department] proximately cause the accident in question?[3]

The jury answered "yes" to the liability question. On appeal, the Department challenges the sufficiency of the evidence as to the second element.

The same evidence discussed above that created a fact issue as to the Department's actual knowledge for immunity purposes was also sufficient to support the jury's verdict that the Department knew of the hole in the bicycle lane. The photographs

---

[3] The Department did not object to the jury charge, so we are guided by the law as set out in the charge. *See Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) (holding that in the context of a jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if no objection is made to the charge); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001) (same).

and testimony admitted at trial circumstantially established that a crew of Department employees must have seen the hole when performing crack seal repairs in the bicycle lane. The photographs showed crack sealant present in the hole, and there was testimony that the only way crack sealant would have been in the hole was if a Department employee pushed it in there during the crack sealing process.

The Department points to the testimony of several Department employees who stated that they had never seen the hole in the bicycle lane when performing repairs in that area and would have repaired it if they had seen it. The Department also points to testimony by these employees that they would not have used the crack sealing procedure to repair the type of hole that caused Womac's accident. The Department argues that the foregoing is evidence that no Department employee was aware of the condition prior to Womac's accident and that Womac produced no direct evidence to the contrary. But the Department's argument ignores the circumstantial evidence, discussed above, that some Department employees must have seen the hole as crack sealant would not have been present in the hole unless a Department employee pushed the sealant into the hole during repairs in the area. There was conflicting testimony, and we will not disturb the jury's weighing of the evidence in that regard. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The Department also argues that there was no evidence about when the dangerous condition in the bicycle lane came into existence, and without such temporal evidence, Womac could not prove constructive knowledge. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 409 (Tex. 2006) (holding that dangerous condition must have

17

existed for some time before a defendant can be charged with constructive knowledge of the condition). We find the Department's argument unpersuasive as the evidence was sufficient to show that the Department had actual knowledge of the hole in the bicycle lane, not merely constructive knowledge.

In sum, we conclude that the evidence was sufficient to allow reasonable and fair-minded jurors to find that the Department knew of the hole in the bicycle lane that caused Womac's accident. *See City of Keller*, 168 S.W.3d at 827. We also conclude that the evidence was not so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Kloesel*, 266 S.W.3d at 469-70. The Department's third issue is overruled.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 11th
day of October, 2012.

18