

# NUMBER 13-11-00278-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| NOE DE LOS SANTOS, JOE AVALOS,<br>RUDY RIVERA, AND RUBEN VAIZ, | Appellants, |
| **v.** | |
| CITY OF ROBSTOWN, ROBSTOWN<br>IMPROVEMENT DEVELOPMENT<br>CORP., RODRIGO RAMON, AND<br>ARMANDO GONZALEZ, | Appellees. |

## On appeal from the County Court at Law No. 4
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellants Noe De Los Santos, Joe Avalos, Rudy Rivera, and Ruben Vaiz appeal

the trial court's order granting a plea to the jurisdiction in favor of appellees City of

Robstown (City), Robstown Improvement Development Corporation (RIDC), Rodrigo

Ramon, the City's mayor, and Armando Gonzalez, the RIDC's president.[1]  By two issues which we reorganize as four, appellants contend that:   (1) the City and the RIDC waived immunity under the Uniform Declaratory Judgment Act (UDJA); (2) the trial court erred in granting the City's plea to the jurisdiction on appellants' claim that the City's ordinance was not valid; (3) the trial court erred in granting the plea to the jurisdiction on appellants' ultra vires claims; and (4) the trial court erred in granting appellees' plea to the jurisdiction and dismissing appellants' claims when their pleadings did not demonstrate incurable defects.   We affirm in part, and reverse and remand in part.

## I.  BACKGROUND

On September 13, 2010, appellants filed their original petition for declaratory judgment complaining of an ordinance that appellees planned to adopt for the issuance of certificates of obligation (certificates).   Appellants argued that appellees' action, which would authorize the issuance of certificates without voter approval, conflicted with the Robstown City Charter (City Charter), which provides, in relevant part, "that no bonds of the [C]ity shall ever be issued without a vote of the people, except refunding bond[s] which may be issued without a vote."   Appellants requested (1) a declaration that the City's issuance of certificates without prior voter approval would be in violation of the City Charter, and (2) an injunction enjoining the City from issuing certificates without prior voter approval.   Appellants claimed standing without the need to demonstrate a particularized injury because they were taxpayers, seeking equitable relief for what they alleged was the illegal expenditure of public funds.

---

[1] It is undisputed that appellants are taxpayers of the City, which is a home rule municipality.

2

The same day appellants filed their original petition, Robstown's City Council adopted Ordinance No. 1034, which authorized the issuance of certificates of $5.6 million dollars for the construction of a new city hall.[2]   The City claimed that the state legislature authorized its action in the Certificate of Obligation Act (the Act).   *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.041-.065 (West 2005 & Supp. 2011).   Section 271.044(b) of the Act provides that certificates may be authorized by an ordinance adopted by the City's governing body.   *See id.* § 271.044(b) (West 2005).   In addition, section 271.047(a) sets out that the City may use this subchapter regardless of any provision in its charter to the contrary.   *See id.* § 271.047(a) (West 2005).   The City argued, therefore, that the issuance of the certificates did not require voter approval.   The ordinance provided for the payment of the certificates and pledged the revenues from annual ad valorem taxes, levied against all taxable property in the City, sufficient to provide for the payment of the interest on and principal of the certificates.   The ordinance additionally secured the payment of the certificates "by and payable from a limited pledge of the net revenues of the [C]ity's waterworks and sewer system."

On November 8, 2010, appellees filed a motion to dismiss pursuant to a plea to the jurisdiction, in which they asserted the following:   (1) appellants lack standing because their original petition was improperly premised on alleged future legislative action—the City's planned adoption of an ordinance authorizing the issuance of certificates; (2) appellants failed to allege a justiciable controversy in their original petition because the legal basis of their declaratory action is expressly negated by section 271.044(b) of the Act; (3) appellants assert no allegations against the RIDC, Mayor Ramon, or RIDC

---

[2] Appellants also claim that the City further intends to use the bond proceeds to demolish the present city hall and transform it into a parking lot for the new city hall.

President Gonzalez; and (4) appellants' claims are barred by either sovereign or legislative immunity. The trial court heard appellees' motion to dismiss on January 27, 2011.

At the January 27 hearing, the trial court granted appellants leave to file an amended petition. In their amended petition, appellants again complained of the City's "action in authorizing the certificates of obligation" as "a willful violation of an express prohibition of the City's charter." Appellants continued to argue that, as taxpayers, they had standing because they were challenging illegal expenditure of public funds. Appellants asserted new allegations, which are summarized as follows:

- The City Council is violating the Act by using bond proceeds to demolish the present city hall when section 271.0461 of the Act provides that such bond proceeds may only be used when demolishing dangerous structures;

- The City has failed to comply with the statutory requirements for reimbursement;

- Any payment of the certificates from sanitary sewer system fees is an illegal tax; and

- The City cannot bind the RIDC to pay on the certificates for forty years without the creation of an interest and sinking fund.[3]

Appellants requested a declaration that the City is not authorized to issue certificates

---

[3] Appellants apparently have a typographical error in their pleadings because they set out that "the City of Robstown cannot bind the development corporation to pay on the certificates of obligation for a period of 40 years *with* the creation of an interest and sinking fund as required by the Texas Constitution." (Emphasis added.) We read this allegation to be "with[out] the creation of an interest and sinking fund." *See City of Houston v. Williams*, 353 S.W.3d 128, 139-140 (Tex. 2011) (quoting TEX. CONST. art. XI, § 5) ("Our Constitution ordains that 'no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon.'").

without prior voter approval. Appellants also asked that the declaratory judgment address their ultra vires claims.

Appellees filed no amended or supplemental motion to dismiss addressing appellants' amended petition. Rather, at the hearing when the trial court asked if appellees' counsel "want[ed] time to replead or do something?", he answered,

> [W]e'd like to proceed on the matters that were brought forth in the—that are contained—if the [c]ourt is going to grant leave—that are contained in the original petition . . . —there's no justiciable controversy putting aside the standing because the original claim and their lynchpin claim is saying, "City of Robstown, City Council, you can't enter into these—this five million dollar contract for certificates of obligation because the charter says no." Your [H]onor, [the] certificates of obligation [act], which was passed in 1971 by the Texas Legislature[,] specifically sets forth under 271.044 says a municipal—a home rule municipality such as Robstown may use this subchapter regardless of any provision in the municipality's charter due to—. . . . That's the lynchpin . . . of my argument, Judge.

Appellees claimed that the same argument applied to appellants' amended petition, and therefore, there was no justiciable controversy as to those claims either. After hearing appellees' response, the trial court stated, "[W]ith respect to the pleadings on file . . . [appellants] do not have standing." It entered the following order:

> After considering Defendants, CITY OF ROBSTOWN ("CITY"), ROBSTOWN IMPROVEMENT DEVELOPMENT CORP. ("RIDC"), RODRIGO RAMON ("RAMON") AND ARMANDO GONZALEZ ("GONZALEZ") Motion to Dismiss/Plea to the jurisdiction for Lack of Jurisdiction, and the response, if any, and arguments of counsel, and after receiving evidence in open court, the court finds that the Motion is well founded.[4]
>
> IT IS THEREFORE, ORDERED that Defendants' Motion to Dismiss/Plea to the Jurisdiction for Lack of Jurisdiction is in all things GRANTED and Plaintiffs' claims and causes of action against Defendants are dismissed with prejudice. for lack of standing.[5]

---

[4] The order states that the trial court received evidence in open court. However, our review of the reporter's record reveals that no evidence was admitted at the hearing.

[5] The words "for lack of standing" were hand-written on the order.

5

The trial court issued no findings of fact or conclusions of law.   This appeal followed.

## II.   CLAIMS AGAINST THE CITY AND THE RIDC

### A.   Immunity

By their first issue, appellants contend that the City and the RIDC waived immunity under the UDJA.   Although appellees pleaded sovereign immunity as a defense in their answer to appellants' suit and argued it as part of their motion to dismiss, the trial court granted the plea to the jurisdiction based on lack of standing, not immunity. Nonetheless, the issue is properly before us because immunity impacts subject-matter jurisdiction and may be raised for the first time on appeal.   *See Manbeck v. Austin Indep. Sch. Dist.*, No. 11-0429, 2012 Tex. LEXIS 747, at *3-4 (Tex. Aug. 31, 2012) (per curiam) ("[T]he defense of sovereign immunity from suit sufficiently implicates subject[-]matter jurisdiction . . . that the defense may be raised for the first time on appeal.").   We review this immunity question de novo.   *See Tex. Dep't of Transportation v. Sefzik*, 355 S.W.3d 618, 620-22 (Tex. 2011) (per curiam).

"[S]overeign immunity bars UDJA actions against the state and its political subdivisions absent a legislative waiver."   *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368-70 (Tex. 2009)).   The UDJA expressly waives immunity by providing that persons may challenge the validity of ordinances or statutes and contemplates that governmental entities must be joined in suits to construe their legislative pronouncements.   *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 634 (Tex. 2010) (citing *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994); *Heinrich*, 284 S.W.3d at 373 n.6); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2008) ("In any proceeding that involves the validity of a municipal

ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.").

Construing appellants' action against the City as a challenge to the validity of an ordinance, we conclude that the City's immunity has been expressly waived. *See Tex. Lottery Comm'n*, 325 S.W.3d at 634; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b). However, we agree with appellees that appellants have made no such claims against the RIDC.[6] Therefore, appellants have asserted no basis for the RIDC's waiver of immunity on appellants' validity claims. Accordingly, we sustain the first issue as to the City and overrule it as to the RIDC.

## B.    Lack of Standing

By their second issue, appellants contend that the trial court erred in granting the City's plea to the jurisdiction and in dismissing their ordinance-validity challenge against the City for lack of standing.

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000), *overruled on other grounds*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004); *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). It "is a dilatory plea, the purpose of which is generally to defeat an action 'without regard to whether the claims asserted have merit.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (quoting *Bland*, 34 S.W.3d at 554).

---

[6] As discussed in Section III, appellants alleged ultra vires claims against the RIDC through its president, Armando Gonzalez.

Standing is an element of a court's subject-matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). The general test for standing requires that there (a) shall be a justiciable controversy between the parties, which (b) will be actually determined by the judicial declaration sought. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *City of San Benito v. Ebarb*, 88 S.W.3d 711, 720 (Tex. App.—Corpus Christi 2002, pet. denied) (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). A real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute must exist to constitute a justiciable controversy. *Ebarb*, 88 S.W.3d at 720 (citing *Bonham State Bank*, 907 S.W. 2d at 467). Because the question of standing is a legal question, we review it de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

Appellants pleaded that they were entitled to declaratory relief because of a conflict between the City Charter and the Act. Appellants assert that when there is a conflict, the City is bound to abide by the City Charter, which, in this case, sets out that the City cannot issue certificates without voter approval. In response, the City relies on sections 271.044(b) and 271.047(a) of the Act. Section 271.044(b) provides that "[a] home-rule municipality may use this subchapter regardless of any provision in the municipality's charter to the contrary." TEX. LOCAL GOV'T CODE ANN. § 271.044(b). Section 271.047(a) of the Act further provides that certificates may be authorized by an ordinance adopted by the governing body of a municipality. *See id.* § 271.047(a). The City asserts that based on these provisions, the Act specifically controls over the City Charter provision to the contrary, and, thus, there is no justiciable controversy.

8

The trial court apparently agreed with the City and concluded that appellants lacked standing to sue the City because no justiciable controversy existed between the parties. *See Brooks*, 141 S.W.3d at 164-65. However, this case is before us on a plea to the jurisdiction with respect to standing, not the merits of the underlying claim. Based on our de novo review of the standing question, *see Mayhew*, 964 S.W.2d at 928 (Tex. 1998), appellants have presented a real and substantial controversy involving a genuine conflict of tangible interests. *See Brooks*, 141 S.W.3d at 164-65; *Ebarb*, 985 S.W.2d at 153.

Appellants have asked the trial court to determine the validity of an ordinance by declaring that the City was "not authorized to issue the certificates without voter approval," while the City has asked the trial court to determine that the City was authorized to do so pursuant to sections 271.044(b) and 271.047(a) of the local government code. The conflict is not merely a theoretical dispute. *See Ebarb*, 985 S.W. 2d at 153. And a declaratory judgment, not a ruling on a plea to the jurisdiction, will resolve this controversy. *See Brooks*, 141 S.W.3d at 164-65; *Ebarb*, 985 S.W.2d at 153. Therefore, without regard to whether appellants' asserted claims have merit, *see Garcia*, 372 S.W.3d at 635, we conclude that appellants have met the general test for standing. *See Brooks*, 141 S.W.3d at 164-65. The trial court erred in granting the City's plea to the jurisdiction for lack of standing. We sustain appellants' second issue as to appellants' ordinance-validity claim against the City.

### III. CLAIMS AGAINST MAYOR RAMON AND RIDC PRESIDENT GONZALEZ

In their third issue, appellants contend that the trial court erred in granting the plea to the jurisdiction on their ultra vires claims against Mayor Ramon and RIDC President

9

Gonzalez, the responsible government actors. In their attempt to invoke the district court's subject-matter jurisdiction, appellants claim standing as taxpayers who are seeking relief for illegal expenditures of public funds. They also assert that the ultra vires exception to sovereign immunity applies to their claims brought against Mayor Ramon and RIDC President Gonzalez.

## A. Applicable Law

### 1. Standing

Unless standing is conferred by statute, taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right. But in Texas law there is a long-established exception to this general rule: a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury.

*Bland Indep. School Dist.,* 34 S.W.3d at 556 (citations omitted); *see Hendee v. Dewhurst*, 228 S.W.3d 354, 373-74, 378-79 & n.31 (Tex. App.—Austin 2007, pet. denied) (op. on reh'g); *see also San Patricio Muni. Water Dist. v. City of Corpus Christi*, No. 13-10-00272-CV, 2011 Tex. App. LEXIS 262, at *16 (Tex. App.—Corpus Christi Jan. 13, 2011, no pet.) (mem. op.).

"The authorities[, also,] make a distinction between suits by a taxpayer to recover public funds already illegally expended and suits to restrain the illegal expenditure of public funds." *Kordus v. Garland*, 561 S.W.2d 260, 262-63 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.); *see Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 200 (Tex. 1944); *Zimmelman v. Harris County*, 819 S.W.2d 178, 182 (Tex. App.—Houston [1st Dist.] 1991, no writ). As long as the public money has not yet been spent, the taxpayer is considered to have a justiciable interest in ensuring that the money not be spent illegally. *See Bland*

*Indep. Sch. Dist.*, 34 S.W.3d at 556 ("'When a taxpayer brings an action to restrain the illegal expenditure . . . of tax money he sues for himself, and it is held that his interest in the subject-matter is sufficient to support the action . . . .'" (quoting *Hoffman v. Davis*, 128 Tex. 503, 100 S.W.2d 94, 95 (Tex. 1937)).   The Texas Supreme Court has explained that this distinction rests upon a balancing of taxpayers' interests in restraining illegal spending of their tax dollars with the interest in avoiding disruption of governmental operations.   *See id.* at 555-58.

### 2.   Ultra Vires Exception to Immunity[7]

The ultra vires exception to sovereign immunity "permits a plaintiff to sue a state official in his official capacity (thereby binding the State through its agent) for prospective injunctive or declaratory relief to restrain the official from violating statutory or constitutional provisions."   *Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 920 (Tex. App.—Austin 2010, pet. denied) (citing *Heinrich*, 284 S.W.3d at 372-73, 377).

> Sovereign immunity does not bar such [ultra vires] suits because, in concept, [nondiscretionary, ministerial] acts of state officials that are not lawfully authorized are not considered to be acts of the State, and the remedy of compelling such officials to comply with the law, while binding on the State, "do[es] not attempt to exert control over the [S]tate [but] attempt[s] to reassert the control of the [S]tate."

*Id.* at 920 (quoting *Heinrich*, 284 S.W. 3d at 372-73).   In an ultra vires action, the governmental entity remains immune from suit.   *Heinrich*, 284 S.W.3d at 372-73.

---

[7] Although appellants' amended petition does not include the term "ultra vires," it is clear that their suit is, in substance, an ultra vires suit because it seeks to compel the City's and the RIDC's compliance with statutory provisions.   The underlying nature of appellants' ultra vires claims against Ramon and Gonzalez and the relief they seek is directly related to whether Ramon and Gonzalez acted outside the scope of their statutory authority.   Appellants ultimately desire to compel a government official to perform some act that they consider to be nondiscretionary (to comply with statutory provisions).   This is relief that falls within the ultra vires rationale.   *See Tex. Dep't of Trans. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

Instead, "the proper defendant in an ultra vires action is the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself." *Sefzik,* 355 S.W.3d at 621 (citing *Heinrich,* 284 S.W.3d at 372-73).

Like taxpayer standing, immunity for an ultra vires act is only a waiver with respect to restraining prospective governmental expenditures. *Heinrich,* 284 S.W.3d at 376. A suit brought under the ultra vires waiver of governmental immunity cannot be used to obtain monetary relief for past damages from such acts. *See id.* at 374-76.

## B.    Discussion

### 1.    Allegations

In their amended petition, appellants alleged the following:

[T]he Robstown City Council is further in violation of the Certificates of Obligation Act because it intends to use the bond proceeds for the demolition of the present city hall. However, [s]ection 271.0461 of the Act provides that certificates may be issued by any municipality for the payment of contractual obligations to be incurred [only] in *demolishing dangerous structures*;

. . . .

[T]he City has transferred bond proceeds to its general account despite its failure to comply with the statutory requirements for reimbursement;

. . . .

The City intends to pay for the certificates of obligation from the levy of ad valorem taxes and from a lien on and pledge of the revenues from the City's sanitary sewer system. However, the revenues from the City's sanitary sewer system are already pledged for payment of revenue bonds issued in 1992. Additionally, the City's sewer service is part of the City's exercise of police power because it involves the City's power to protect the public health, safety, comfort and welfare, which services fall within the City's exercise of its police power. . . . When charging a fee for the exercise of its police power, the fee charged by the City must be in amounts reasonable [sic] necessary for such purposes. . . . If the fee charged by the City bears no reasonable relationship to the cost incurred by the City, and if the fee goes to support City services or merely to raises [sic] funds for the City, then

12

> the fees is [sic], by definition, [an illegal] tax;
>
> . . . .
>
> The City . . . intends to pay one-third of annual payments on the certificates . . . from the [RIDC]. However, the City . . . cannot bind the development corporation to pay on the certificates . . . for a period of 40 years with[out the] creation of an interest and sinking fund as required by the Texas Constitution.

Through these allegations, appellants sought declaratory relief in order to restrain appellees from violating a statute or the constitution by spending public funds illegally through the certificates of obligation. Although the trial court gave appellees an opportunity to respond, they did not do so. Instead, they took the position that no justiciable controversy existed as to the new claims as well.

### 2. Standing

Construing the amended petition liberally in favor of appellants, as we must in this plea to the jurisdiction proceeding, and looking to their intent, *see City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011), appellants have alleged that the intended use of the money to pay for the certificates of obligation is an illegal expenditure of funds. Appellants appear to be bringing this suit against Mayor Ramon and RIDC President Gonzalez to restrain the illegal expenditure of tax money; to restrain future expenditures that are not lawfully authorized. The allegations are not premised on the City's adoption of an ordinance authorizing the issuance of certificates without voter approval. Rather, the allegations are premised on the officials' acts or omissions, which "allegedly trampled on [appellants'] rights." *See Sefzik,* 355 S.W.3d at 621 (citing *Heinrich*, 284 S.W.3d at 372-73).

13

Therefore, to the extent that the public money has not yet been spent, appellants have a justiciable interest in this case, a justiciable interest in ensuring that the money is not spent illegally. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 556. Accordingly, we conclude appellants have taxpayer standing as to these ultra vires allegations. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

### 3.    Immunity

Appellants further contend that they identified Mayor Ramon as the City's official responsible for the ultra vires actions alleged in their amended pleading because his ministerial duties are set out in the charter and in statutes. Appellants complain that the City's allegedly illegal actions, through Mayor Ramon, pledged revenues from the sewer systems to issue the certificates of obligation for the construction of a new city hall and not for a sewer treatment or collection project. Appellants assert that they also made ultra vires allegations against Mayor Ramon related to the City's financial condition, such as the transfer of bond funds to the City's general account without complying with statutory requirements for reimbursement.

In addition, appellants assert that the RIDC, through its president, performed nondiscretionary acts unauthorized by law. For example, they claim that through Gonzalez's actions long-term debt was created without establishing an interest and sinking fund, funds were encumbered without voter approval, and public funds were transferred without authority to the City's general fund to pay for the construction of a new city hall.

Based on the above, we conclude that Mayor Rodriguez and RIDC President Gonzalez are not immune from appellants' lawsuit, which includes claims intended to

14

bring future acts into compliance with the statute and the constitution and to restrain prospective governmental expenditures. Appellants invoked the trial court's jurisdiction when they alleged such ultra vires conduct against Mayor Rodriguez and RIDC President Gonzalez, each in his official capacity.

### 4. Summary

Having concluded that appellants have standing to sue and that immunity has been waived with regard to appellants' ultra vires claims against Mayor Ramon and RIDC President Gonzalez, we sustain appellants' third issue.[8]

## IV. CONCLUSION

We reverse the order of the trial court granting appellees' motion to dismiss and their plea to the jurisdiction as to appellants' claims against the City that involve the validity of the ordinance and their ultra vires claims against Mayor Ramon and RIDC President Gonzalez. We remand those claims to the trial court for proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 13th
day of December, 2012.

---

[8] Because we have sustained appellants' dispositive issues, we need not address the remaining issue. *See* TEX. R. APP. P. 47.1.

15