**Affirmed in Part, Reversed and Rendered in Part, Remanded, and Majority and Dissenting Opinions filed June 1, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00367-CV

---

### HARRIS COUNTY, TEXAS, Appellant

### V.

### JOSHUA JACOB MIRELES, CRISTIN MIRELES, and COLONIAL COUNTY MUTUAL INSURANCE COMPANY, Appellees

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2019-61633**

---

## MAJORITY OPINION

Harris County appeals the denial of its plea to the jurisdiction based on governmental immunity. The county sued appellee Joshua Jacob Mireles for damages arising out of a car accident involving Joshua and a Harris County Deputy Constable. After Joshua filed a counterclaim, and after other intervenors also

asserted affirmative claims against the county, Harris County moved to dismiss all claims against it on immunity grounds.

For the reasons explained below, the record demonstrates conclusively that Harris County is immune from all claims asserted against it with the exception of Joshua's counterclaim for damages, if any, offsetting the county's claim for affirmative relief against Joshua.[1] Thus, to that extent, we affirm in part the trial court's order denying Harris County's plea to the jurisdiction as to Joshua's counterclaim. However, we reverse the trial court's order denying Harris County's plea to the jurisdiction as to the intervenors' claims, and we render judgment dismissing those claims with prejudice. We remand to the trial court for proceedings consistent with this opinion.

## Background

This case arises from an automobile collision between Joshua Mireles and Harris County Deputy Constable James Solis. According to Harris County, Deputy Solis was responding to a priority one call with emergency equipment activated when Joshua struck the deputy's vehicle as Deputy Solis attempted a u-turn.

Harris County filed suit against Joshua claiming that his negligence proximately caused the collision. The county sought $2,434.17 in worker's compensation benefits paid to Deputy Solis and approximately $10,000 in property damage to the deputy's patrol vehicle. Joshua answered the lawsuit and filed a counterclaim against the county. In his counterclaim, Joshua alleged that Deputy Solis caused the accident and that Harris County was vicariously liable for the deputy's sole negligence. Joshua sought recovery for personal injuries and property damage. Cristin Mireles (Joshua's wife) and Colonial County Mutual Insurance

---

[1] *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

Company (collectively, "Intervenors") filed petitions in intervention seeking recovery from Harris County based on Deputy Solis's alleged negligence. Colonial alleged that it insured the vehicle Joshua was driving, which was a total loss. Asserting its insured's rights through subrogation, Colonial sought $16,671.70 from the county.

Harris County filed a plea to the jurisdiction arguing that it was immune from all affirmative claims asserted against it, including Joshua's counterclaim. The county claimed governmental immunity based on Deputy Solis's official immunity and supported the plea with an unsworn declaration by Deputy Solis. The Intervenors filed responses asserting that Deputy Solis was not entitled to official immunity because a fact question exists whether he acted in good faith. In her response, Cristin also objected to Deputy Solis's declaration as conclusory and incompetent. Joshua's response incorporated the Intervenors' response but otherwise asserted no additional arguments.

The trial court denied the county's jurisdictional plea, and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

<b>Analysis</b>

In its sole issue, Harris County contends that the trial court erred in denying its plea to the jurisdiction as to all claims asserted against it because Deputy Solis is entitled to official immunity as a matter of law and therefore the county's governmental immunity is not waived.

## A.  Standard of Review

Because a plea to the jurisdiction raises questions of law, we apply de novo review. *See Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020). Governmental immunity from suit will defeat a trial court's subject matter

3

jurisdiction and is properly asserted in a plea to the jurisdiction. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018); *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). A plaintiff bears the burden of establishing a waiver of immunity. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 865-66 (Tex. 2023); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). A governmental unit challenging whether a claimant has met this burden may by a plea to the jurisdiction contest the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Miranda*, 133 S.W.3d at 227. Our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Id.* at 221, 228. In determining whether a plaintiff has met that burden, we take as true all evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* at 228. If the evidence and allegations create a fact question regarding jurisdiction, then a court cannot grant a plea to the jurisdiction, and the factfinder must resolve the fact issue. *Id.* at 227-28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then a court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## B.    Joshua's Counterclaim

Harris County sued Joshua for his alleged negligence in causing the accident that injured Deputy Solis and damaged the county's vehicle. Joshua filed a

counterclaim asserting that Deputy Solis was solely at fault. Joshua sought recovery from the county for personal injuries and damage to the truck he was driving. We first consider whether the county enjoys immunity from suit against Joshua's counterclaim.

The common law doctrine of governmental immunity protects political subdivisions of the state from suit when they perform governmental functions. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). When governmental immunity exists, it is the Legislature's prerogative to decide when it should be waived to permit suits against governmental units. *See Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017); *Reata*, 197 S.W.3d at 375. As governmental immunity is a common law doctrine, however, it remains the judiciary's responsibility to declare its existence and define its boundaries. *See Hillman v. Nueces County*, 579 S.W.3d 354, 361 (Tex. 2019); *Reata*, 197 S.W.3d at 375. Exercising this responsibility, the supreme court has determined that governmental immunity simply does not exist in some limited circumstances. For instance, when a governmental entity subjects itself to court jurisdiction by asserting claims for monetary recovery, it "does not have immunity from suit for monetary claims against it that are 'germane to, connected with, or properly defensive to' affirmative claims made by the entity," to the extent that the claims against the entity offset the entity's own claims. *City of Dallas v. Albert*, 354 S.W.3d 368, 372 (Tex. 2011) (quoting *Reata*, 197 S.W.3d at 378). This is not because a governmental entity "waives" its immunity by filing a claim for affirmative relief; rather, the scope of governmental immunity "simply does not reach the defensive counterclaims to the extent that any recovery on the counterclaims serves as an 'offset' against the government's recovery." *C. Bondura Holdings, Inc. v. Lake Procter Irrigation Auth.*

5

*of Comanche Cnty.*, 540 S.W.3d 548, 550 (Tex. 2019) (per curiam) (discussing *Reata*, 197 S.W.3d at 376-77).

When Harris County filed suit against Joshua, it chose "to engage in litigation to assert affirmative claims for monetary damages" and "presumably . . . made a decision to expend resources to pay litigation costs." *Reata*, 197 S.W.3d at 375. Once the county asserts affirmative claims for monetary recovery, it must participate in the litigation process as an ordinary litigant. *Id.* at 377. It then "leave[s] its sphere of immunity from suit" for offsetting damage claims against it which are germane to, connected with and properly defensive to the claims the county asserts. *Id.*

Joshua's counterclaim is "germane to, connected with, and properly defensive to" Harris County's claim, and Joshua alleges, at least in part, offsetting damages. *Id.* Therefore, the trial court acquired subject matter jurisdiction over Joshua's counterclaim to that extent and save for the limitation explained in *Reata*. *Id.* We thus conclude that the trial court did not err in denying Harris County's plea to the jurisdiction as to the part of Joshua's counterclaim for damages that would offset, in whole or in part, any recovery by the county. *Id.*

We reach this conclusion notwithstanding the fact that Joshua has neither cited *Reata* nor argued that the trial court possessed jurisdiction over at least part of his counterclaim based on *Reata*. Although we rely on litigants to bring jurisdictional issues to the forefront, when we independently perceive jurisdictional concerns unaided by the parties, we resolve those doubts rather than "turning a blind eye" to them. *See Rattray*, 662 S.W.3d at 869. "[W]e are obligated to review *sua sponte* issues affecting jurisdiction," and we may raise jurisdictional issues for the first time on appeal. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993). Our duty to evaluate and resolve jurisdictional issues includes an obligation to satisfy ourselves

that the trial court's jurisdiction is well-founded even when the parties have not necessarily explained why it is so. *See S.C. v. M.B.*, 650 S.W.3d 428, 449 (Tex. 2022) ("In our role as an appellate court, we are empowered and duty-bound to 'ensure that subject-matter jurisdiction—[our] own and that of the lower courts—is secure.'"); *York v. Samuel*, No. 01-05-00549-CV, 2007 WL 1018364, at *2-3 (Tex. App.—Houston [1st Dist.] Apr. 5, 2007, pet. denied) (mem. op.) (examining sua sponte trial court's jurisdiction and concluding jurisdiction existed).

Harris County's claims against Joshua, and Joshua's claims for offsetting damages against the county, clearly implicate *Reata*'s holding. Under *Reata*'s reasoning, Harris County's plea to the jurisdiction did not effectively invoke immunity against Joshua's defensive and offsetting damage claims because there exists no immunity to invoke against those claims. Whether Joshua relied on *Reata* in response to the plea—or whether he responded at all—is therefore jurisdictionally inconsequential insofar as his counterclaim is concerned. As long as jurisdictional prerequisites are otherwise satisfied, Joshua can by his silence neither create immunity where it does not exist nor defeat the trial court's lawful jurisdiction where it is properly acquired. For these reasons, we do not hesitate to identify an obvious basis for trial court jurisdiction.

The county, however, "continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset" the governmental entity's claims. *Reata*, 197 S.W.3d at 377; *see Albert*, 354 S.W.3d at 374. Thus, for Joshua to sue for and recover damages exceeding the amount necessary to offset any recovery against Joshua by the county, a waiver of the county's immunity must be shown. *See Rattray*, 662 S.W.3d at 865-66. For the reasons detailed below in section C, we conclude that Harris County conclusively proved the affirmative defense of Deputy Solis's official immunity and that Joshua

failed to raise a fact question on that defense. Accordingly, the trial court lacks jurisdiction over Joshua's affirmative claims against the county for damages exceeding amounts necessary to offset the county's claims.

## C. Intervenors' Claims

We next consider whether Harris County is immune from the Intervenors' claims.[2] Cristin intervened in the lawsuit between Harris County and Joshua, asserting that Joshua's or Deputy Solis's alleged negligence caused her injuries and damages. Colonial County also intervened, seeking to recover the loss it paid on behalf of its insured, Sylvia Mireles, allegedly caused by Deputy Solis's negligence.[3]

### 1. Immunity Applies to the Intervenors' Claims

We begin by observing that the claims asserted by the Intervenors do not fall within *Reata*'s holding. The only claims at issue in that case were those Reata and the City of Dallas asserted against each other. *See Reata*, 197 S.W.3d at 373-74. *Reata* did not discuss or apply its reasoning to the claims of any intervenors or third parties. Relatedly, the court's rationale in *Reata* rested in part on fairness and public fisc concerns when a governmental unit chooses to assert affirmative claims for monetary damages against a party. *Id.* at 375-76. In that instance, "the only public resources expended will be those the government *chose* to expend when it elected to interject itself in litigation." *Hillman*, 579 S.W.3d at 362 (emphasis in original).

By filing suit, Harris County chose to litigate, and spend public money on pursuing claims, against Joshua. It did not choose to sue the Intervenors, nor did it

---

[2] We generally analyze jurisdiction separately for each claim. *See Trant v. Brazos Valley Solid Waste Mgmt. Agency, Inc.*, 478 S.W.3d 53, 58 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

[3] Colonial seeks damages from the county for the amount it allegedly paid out for the total loss of Sylvia's vehicle. Colonial alleges that Joshua was driving Sylvia's insured vehicle with permission, and it asserts Sylvia's rights through subrogation.

choose to spend public money defending the Intervenors' claims. Disregarding the doctrine of immunity in connection with the county's defense of those claims is not consistent with *Reata*'s reasoning. *See id.* Moreover, the Intervenors' claims against the county cannot be considered as involving offsetting damages. *See Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 533 (Tex. 2012). The Intervenors would not be entitled to claim an offset of any damages the county may be entitled to recover from Joshua.[4]

For these reasons, we conclude that the Intervenors' claims are within the sphere of Harris County's governmental immunity, and *Reata* does not apply to those claims. Thus, the county may properly invoke immunity against the Intervenors' claims.

### 2. Official Immunity and Good Faith

Harris County, as a political subdivision of the state, cannot be liable for an employee's wrongful acts unless its governmental immunity has been waived. *See City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In the Texas Tort Claims Act ("TTCA"), the Legislature has waived governmental units' immunity from suit for personal injury and property damage proximately caused by the wrongful act or negligence of employees acting within the scope of their authority if the injuries arise from the operation or use of motor-driven vehicles. Tex. Civ. Prac. & Rem. Code § 101.021(1); *see Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). This waiver of immunity applies if the employee would be personally liable to the claimant according to Texas law. *See* Tex. Civ. Prac. & Rem. Code § 101.021(1)(B), (2).[5] The TTCA's personal

---

[4] Again, in its First Amended Petition in Intervention, Colonial asserts Sylvia's, not Joshua's, rights.

[5] The act provides:

9

liability requirement narrows the scope of the waiver by ensuring that when a governmental unit employee is immune from suit the governmental unit likewise remains immune from suit. *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *Martinez v. Harris County*, 526 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

The only aspect of section 101.021(1) in dispute is whether Deputy Solis would be personally liable to the claimants under Texas law. The county says he is not liable due to his official immunity. Because official immunity is an affirmative defense, the burden rests on the county to establish all of its elements, namely that the government official was (1) discharging discretionary duties (2) in good faith (3) while acting within the course and scope of his authority. *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642-43 (Tex. 2015) (per curiam); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465-66 (Tex. 1997). Ultimately the official immunity inquiry is "analogous to the abuse of discretion standard," as it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of San Antonio v. Riojas*, 640 S.W.3d 534, 539 (Tex. 2022) (quoting *Bonilla*, 481 S.W.3d at 643).

Only the element of good faith is disputed. Courts measure good faith against a standard of objective reasonableness. *Bonilla*, 481 S.W.3d at 643; *Wadewitz*, 951

---

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law. . . .

Tex. Civ. Prac. & Rem. Code § 101.021(1); *see id.* § 101.025(a).

S.W.2d at 466.  The party invoking immunity has the burden to prove conclusively that a reasonably prudent officer in the same or similar circumstances could have believed that his actions were justified based on the information the officer possessed.  *See Riojas*, 640 S.W.3d at 539; *Clark*, 38 S.W.3d at 583; *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).  The objective reasonableness of the challenged action involves balancing the need for the action against the risks entailed by such conduct based on the officer's perception of the facts at the time of the event.  *Wadewitz*, 951 S.W.2d at 467.  In this context, "'need' refers to the urgency of the circumstances requiring police intervention."  *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 320 (Tex. 2007) (per curiam).  The "need" factors include the seriousness of the matter to which the officer responded, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and any alternative courses of action that may have been available to achieve a comparable result.  *Riojas*, 640 S.W.3d at 539; *Clark*, 38 S.W.3d at 581.  Against these considerations, officials balance the countervailing risks to public safety, such as the nature and severity of the harm the officer's actions could cause, the likelihood that these risks could have been realized, and whether these risks would be clear to a reasonably prudent officer.  *See Ytuarte*, 229 S.W.3d at 320; *Clark*, 38 S.W.3d at 581-82.  This balancing test applies in emergency-response contexts.  *Riojas*, 640 S.W.3d at 540.

To prevail, the movant's proof must sufficiently assess these need and risk factors.  *See Telthorster v. Tennell*, 92 S.W.3d 457, 462 (Tex. 2002).  That is, the good faith evidence must be substantiated with reference to both the need and risk aspects of the balancing test.  *See Wadewitz*, 951 S.W.2d at 466-67; *Belle*, 297 S.W.3d at 531.  Even so, "magic words" are not needed, and the necessary assessment "does not place an onerous burden on law enforcement."  *Riojas*, 640

11

S.W.3d at 539. The governmental unit need not prove that it would have been unreasonable not to act as the officer did, or that all reasonably prudent officers would have taken the same actions. *See Telthorster*, 92 S.W.3d at 465. Instead, the unit must conclusively prove that a reasonably prudent officer, under the same or similar circumstances, *might* have reached the same decision. *See id.* Additionally, the facts of the case may require the official to provide a continuing assessment of the need and risk factors because emergency responses may involve rapidly changing circumstances. *See Belle*, 297 S.W.3d at 531.

A reviewing court first must determine whether the governmental unit met its initial burden to prove conclusively the officer's good faith. Good faith can be established as a matter of law when the official's factual recitation is supported by the evidence. *Medina Cnty. Comm'rs Ct. v. Integrity Grp., Inc.*, 944 S.W.2d 6, 10 (Tex. App.—San Antonio 1996, no writ). Only when it has been determined that the governmental unit met this burden does the court address whether the nonmovant's evidence raises a genuine issue of material fact. *Belle*, 297 S.W.3d at 531. To defeat a showing of good faith and raise a fact question, the opposing party must present evidence that no reasonable person in the officer's position could have thought the facts justified the officer's actions. *Clark*, 38 S.W.3d at 581.

    3.    Facts

We therefore turn to whether the county met its burden to prove Deputy Solis's good faith conclusively, beginning with a review of the facts. While driving east on FM 1960 in Harris County, Deputy Solis received a "priority one" weapons disturbance call. "Priority one" calls refer to the "highest-level call in terms of importance, severity or need for urgent response." The report alleged that a female with a gun was chasing another female at a nearby address. Deputy Solis and another officer in a separate patrol vehicle, Deputy Michael Ramos, responded to the call by

activating their emergency lights and sirens and proceeding eastbound on FM 1960. Deputy Ramos drove the lead vehicle. FM 1960 consists of five lanes: two eastbound lanes, two westbound lanes, and a center left-turn lane. According to the dashboard camera footage from Deputy Solis's vehicle contained in our record, the deputies proceeded through at least five intersections, repeatedly slowing to safely pass cars stopped at red signals. The video also shows numerous eastbound cars pulling over to yield the way so that the deputies could pass. One of the yielding vehicles was the truck driven by Joshua, which the deputies passed approximately two minutes into their response. Joshua's wife, Cristin, was in the passenger seat.

As Deputy Solis passed Joshua, the dispatcher provided new information indicating that the women involved were at a different location on FM 1960 that he had already passed. To reach this new location, Deputy Solis determined that he needed to reverse course by making a u-turn. He slowed his vehicle, looked to the right lane to make sure it was clear, and looked in his rearview mirror for other vehicles. He saw no other vehicles to his right or behind him and determined he could safely u-turn. He then steered his vehicle into the right eastbound lane and began a u-turn by steering to his left. As he crossed into the center lane, the pickup truck driven by Joshua struck his patrol car. According to the dashboard video, only about ten seconds elapsed between the moment Deputy Solis first drove past Joshua's truck and the impact.

It was a hard collision. Deputy Solis was injured, and the impact tore off his patrol car's front left wheel and substantially damaged the vehicle. After his patrol car came to rest, Deputy Solis could not open the driver-side door and had to crawl out of the passenger door. Emergency medical responders transported the deputy, Joshua, and Cristin to the hospital. Harris County Constable's Office crash

13

investigators concluded that Deputy Solis was at fault for the collision because he turned when unsafe and changed lanes when unsafe.

### 4. Application

Harris County offered Deputy Solis's declaration to establish good faith. "'A police officer's own affidavit may establish good faith.'" *City of Houston v. Sauls*, 654 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2022, pet. filed) (quoting *City of Dallas v. Ross*, No. 05-21-00001-CV, 2021 WL 4304478, at *4 (Tex. App.—Dallas Sept. 22, 2021, no pet.) (mem. op.)); *see City of La Joya v. Herr*, 41 S.W.3d 755, 761 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *Barker v. City of Galveston*, 907 S.W.2d 879, 888 (Tex. App.—Houston [1st Dist.] 1995, writ denied). We examine the declaration to determine whether Deputy Solis sufficiently addressed the need and risk factors. *See Telthorster*, 92 S.W.3d at 462.

Deputy Solis testified regarding his training and experience. He described the facts surrounding the incident, including that he was responding to a "priority one" call for a weapons disturbance, which included "the possibility of serious bodily injury or death[.]" The deputy explained that his emergency equipment—i.e., his lights and sirens—was activated during his response. He described the events leading up to the collision. His description is consistent with events depicted on the dashboard video.[6]

Deputy Solis opined "that a reasonably prudent officer could have believed under the circumstances . . . that the need to arrive at the possible assault outweighed

---

[6] Appellees assert that the dashboard video is irrelevant to the issue of good faith. However, appellees did not object to this evidence on relevance grounds in the trial court. To preserve a complaint about evidence admissibility, the complaining party must object and obtain a ruling on the objection. *See* Tex. R. App. P. 33.1(a); *see also Polecat Hill, LLC v. City of Longview*, 648 S.W.3d 315, 331-32 (Tex. App.—Texarkana 2021, no pet.) (relevance objection made, but not ruled on, did not preserve party's complaint about relevance of summary judgment evidence on appeal).

the risks of harm to the public and that [his] actions were done in good faith." In support of his belief, he explained how he assessed the need to respond to this priority one call:

> Because this was a weapons disturbance, the possibility of serious bodily injury or death was present. . .
>
> [T]he report was of a very serious incident. It was a weapons disturbance and we were informed that one woman with a gun was chasing another woman. That is a situation that could result in serious injury or death to one or both of the women and possibly to other civilians in the area. This was felony conduct. This was extremely dangerous and disturbing conduct. After the dispatcher informed Deputy Ramos and I that the women had moved a grocery store, there was a greater need for our quick arrival. A grocery store on a Sunday afternoon is usually a busy place. A dispute involving a firearm in a place like a grocery store could lead to catastrophic results. The need to arrive was heightened. . . .
>
> I cannot think of any alternatives to the course of action I took. I believed I could safely execute a U-turn at that time.

He also addressed the risks associated with the need to reach the location to which he was dispatched:

> Factors relating to risk relate to public safety concerns, the nature and severity of the harm that an officer's actions could cause to a person, the likelihood of harm and whether that harm was clear to a reasonably prudent officer. . . .
>
> There are always risks when engaging in an emergency response. The risk of an automobile collision is one of the most common risks. And a collision could result in the officer not comp[l]eting the call. However, the risks of a serious collision were small, in my opinion. Deputy Ramos and I responded at a safe speed at all times. We were using emergency equipment. We drove near the speed limits. Two sets of sirens and two sets of lights provide more warning to other drivers. In addition, two sets of eyes, Deputy Ramos'[s] and mine, help lessen the likelihood of an accident. The emergency response took place during daylight on a clear day. The roads were dry. While traffic was

15

heavier at the start of our pursuit, it was lighter at the time the Mireles pickup struck my patrol vehicle. There was little or no oncoming traffic, and the two pickups we passed on our right were the only vehicles going in the same easterly direction as Deputy Ramos and me. I believe the risks to the public and the risks of an accident were very small. . . .

I was very familiar with this part of F.M. 1960. I knew the speed limit was 45 miles per hour so any traffic in the area should have time to slow when I began the U-turn. I saw no traffic coming at me. I knew the two cars I passed had slowed on the side of the road as they should have. I did not see the Mireles pickup when I checked my mirrors. But it was coming at me fast and that resulted in it colliding with me.

Finally, Deputy Solis stated that he:

constantly evaluate[s] in my head the risks of my course of action against the need for my action. I change my tactics (speed, direction, lane usage, etc.) as I proceed throughout the emergency response. I am usually aware whether I have time to make a scene or call, or whether time is not available, and I adjust my conduct accordingly. I did so in this case.

Deputy Solis's declaration details the facts leading up to the collision, discusses his assessment of the needs and risks associated with his response to the emergency call, explains that he was aware of no safer alternatives, and contains sufficient underlying facts supporting his assertions. This dispatch was undisputedly an emergency call, and the deputy's emergency equipment was activated during the entire time. When Deputy Solis determined that he needed to turn around because the subject location had changed, he slowed his vehicle, looked to his right, checked his rearview mirror for traffic behind him, and, seeing none, concluded it was safe to turn. This evidence compares favorably with many cases holding that an officer's good faith was conclusively established even though a collision occurred after the officer looked but did not see any traffic posing a danger and believed it was safe to proceed. *E.g., Ross*, 2021 WL 4304478, at *1, 4-5 (officer, with emergency

16

equipment activated, looked to his left before proceeding into HOV traffic lane, saw no oncoming cars and believed path was clear; officer did not see claimant's car until moment of collision; court held evidence conclusively established good faith); *City of Dallas v. Rodriguez*, No. 05-19-00045-CV, 2020 WL 1486831, at \*5-6 (Tex. App.—Dallas Mar. 27, 2020, no pet.) (mem. op.) (before proceeding through red signal in response to emergency call, officer looked right and left, activated emergency equipment, and proceeded after seeing traffic yielding; collision occurred before officer cleared the intersection; officer's affidavit sufficiently assessed need-risk factors and established officer's good faith); *City of Dallas v. Hernandez-Guerrero*, No. 05-18-00033-CV, 2018 WL 6427641, at \*3-4 (Tex. App.—Dallas Dec. 7, 2018, no pet.) (mem. op.) (officer proceeded through intersection after seeing the intersection was clear of traffic and other cars had yielded; emergency equipment was activated; court held good faith proven as matter of law); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 706 (Tex. App.—Austin 2005, no pet.) (fire truck operator testified that he was responding to an emergency call when he approached intersection, he looked in both directions and saw that traffic had yielded to him before entering the intersection, and his emergency equipment was activated; court held evidence conclusively established good faith).

As explained in *Hudson*, Deputy Solis's inaccurate perception that no cars were behind him when he looked in his rearview mirror does not negate his good faith belief that there was no traffic around him posing a danger if he made a u-turn. *Hudson*, 179 S.W.3d at 706. The mere fact that an accident occurred is not evidence that Deputy Solis did not act in good faith. *Ross*, 2021 WL 4304478, at \*5. "Official immunity is designed to encourage emergency personnel to take reasonably calculated risks when they have properly considered need and risk, not to punish them for having done so." *Hudson*, 179 S.W.3d at 706. Based on the above cases,

17

we hold that Harris County conclusively established that Deputy Solis acted in good faith.

Appellees contend that Deputy Solis's declaration contains conclusory statements, which cannot support a claim of good faith. *See, e.g.*, *Wadewitz*, 951 S.W.2d at 466 (explaining that conclusory statements on good faith will not support a claim of official immunity); *Mata v. Harris County*, No. 14-14-00363-CV, 2016 WL 675379, at *4 (Tex. App.—Houston [14th Dist.] Feb. 18, 2016, pet. denied) (mem. op.). A statement is conclusory if it provides a conclusion but includes no underlying facts supporting the conclusion. *See LaChina v. Woodlands Operating Co.*, 417 S.W.3d 516, 520 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008). The assertions in Deputy Solis's declaration we quote above, however, are factual and not conclusory. *See City of Houston v. Collins*, 515 S.W.3d 467, 479 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (explaining that affidavit containing underlying facts showing that officer performed need-risk analysis were not conclusory); *Hudson*, 179 S.W.3d at 705 (rejecting argument that affidavit supporting good faith contained conclusory statements). To be sure, Deputy Solis's declaration contains statements that are conclusory, but they are unrelated to the good faith inquiry, they are not quoted in this opinion, and we do not rely on them for purposes of the official immunity defense.

Appellees also characterize Deputy Solis's declaration as incompetent proof because he is an "interested witness" and "a plea to the jurisdiction may only be based on testimony of an interested witness if it is uncontroverted and 'clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.'" Such a complaint relates to the form of the declaration, however, and must be preserved in the trial court by presenting the

18

objection and obtaining a ruling. *See Siana Oil & Gas Co. v. White Oak Operating Co.*, No. 01-21-00721-CV, 2022 WL 17981572, at *9 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, no pet.) (mem. op.). Although Cristin asserted this objection in her response to the plea, she failed to secure a ruling. Thus, the argument is not preserved for review.

Our dissenting colleague errs in concluding that the evidence fails to show that Deputy Solis assessed the availability of alternative courses of action to achieve a comparable result. The required showing does not require magic words and may be implicit within the evidence. *Bonilla*, 481 S.W.3d at 645. "The fact that the trooper did not expressly identify 'alternatives' that may have been considered does not render the evidence deficient." *Id.*; *see Clark*, 38 S.W.3d at 585-86. "[D]epending on the circumstances, an officer may not be able to thoroughly analyze each need or risk factor, and . . . this alone should not prevent the officer from establishing good faith." *Riojas*, 640 S.W.3d at 540.

Though no express identification of "alternatives" is required, Deputy Solis's declaration in fact contains an express statement that he could not think of any other alternatives to the action he took. While this statement adequately reflects that he assessed alternatives, the declaration contains additional facts demonstrating that the county met its initial burden. For instance, Deputy Solis stated that he: "constantly evaluate[s] in my head the risks of my course of action against the need for my action. I change my tactics (speed, direction, lane usage, etc.) as I proceed throughout the emergency response. I am usually aware whether I have time to make a scene or call, or whether time is not available, and I adjust my conduct accordingly. I did so in this case." Deputy Solis's testimony showed that the potential danger presented by a person with a gun reportedly chasing another in a crowded grocery store was far greater if officers were not present than the risk of an accident from

19

making a u-turn with his emergency lights flashing and the siren sounding. He testified, and the video confirms, that traffic yielded to him throughout his response. He also testified that before starting his u-turn he looked to his right and in his rear-view mirror. The determinative question is whether the evidence presents a suitable factual basis for concluding that a reasonable official could have believed that the conduct was appropriate considering the *Wadewitz* factors. *See Riojas*, 640 S.W.3d at 539. Here, it does. The dissenting justice errs by imposing a burden far more onerous than supreme court law requires.[7]

Because the county's proof conclusively established good faith, the burden shifted to appellees to present controverting evidence that no reasonable person in Deputy Solis's position could have thought the circumstances justified his actions. *Clark*, 38 S.W.3d at 581; *see Gomez v. City of Houston*, 587 S.W.3d 891, 898 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc). Appellees each responded to Harris County's jurisdictional plea, but only Colonial included evidence with its response.[8] Colonial's evidence included a copy of the crash report completed after the accident, an "Employee Personnel Action Notice" from the constable's office, a "Crash Review Board" report finding that Deputy Solis turned and changed lanes when it was unsafe, and excerpts from Deputy Solis's and Cristin's depositions. Colonial asserted that a fact question existed on the good faith element because: (1) Deputy Solis testified in his deposition that he did not look behind him before

---

[7] In their brief, appellees suggest numerous alternative actions that Deputy Solis could have taken. They say Deputy Solis's contrary statement is "not credible." But because the evidentiary standard applicable to a plea to the jurisdiction generally mirrors that of a summary judgment, a trial court may not make credibility determinations at this stage. *See Tri-State Chems., Inc. v. W. Organics, Inc.*, 83 S.W.3d 189, 198 (Tex. App.—Amarillo 2002, pet. denied).

[8] Joshua joined Colonial's and Cristin's responses.

making the u-turn; and (2) the Constable's Office concluded Deputy Solis was at fault for the accident to an extent that warranted disciplinary action.

We disagree with Colonial's arguments. Regarding its first point, Colonial has inaccurately characterized Deputy Solis's deposition. Deputy Solis explained that after he received the call that the suspects were at a location he had already passed, he looked to his right and checked his rearview mirror to make sure there was no oncoming traffic before he started his u-turn.[9] Colonial focuses on Deputy Solis's subsequent testimony that, after checking his rearview mirror and steering into the righthand lane to begin the turn, he did not look in his rearview mirror for a second time once he was in the righthand lane. Although Deputy Solis said he did not check his rearview mirror for a second time once he steered into the righthand lane to begin the u-turn, he stated that he was watching for oncoming traffic as he began turning. Moreover, the dashboard video indicates that from the time he began to slow his vehicle until the collision was at most five seconds. Colonial does not dispute that Deputy Solis checked his rearview mirror before beginning the u-turn and saw no cars behind him. That he did not check his mirror again within the next few seconds does not create a fact question on good faith.

Colonial's second argument fares no better. Whether the Constable's office determined Deputy Solis was at fault for the accident does not create a fact issue on good faith. Even presuming that Deputy Solis may have been negligent, mere negligence does not create a fact issue on good faith or defeat immunity. *Chambers*, 883 S.W.2d at 655 ("If public officials perform their duties without negligence, they

---

[9] Deputy Solis's deposition testimony is consistent with his declaration: "I began slowing my patrol vehicle. I looked at the right lane to make sure it was clear. And I looked in my rearview mirror to look for traffic behind me. I saw no vehicles behind me. After determining I could safely execute the U-turn, I began to execute a wide, left U-turn. I steered the patrol vehicle into the right lane and then began to execute a U-turn to my left."

do not need immunity. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently."); *Ross*, 2021 WL 4304478, at *5; *Chapman v. Gonzales*, 824 S.W.2d 685, 687-88 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Nor does the fact that Deputy Solis may have violated a Constable precinct policy rebut a conclusive showing of good faith. *Jackson v. City of Baytown*, No. 14-14-00231-CV, 2015 WL 2169509, at *6 (Tex. App.—Houston [14th Dist.] May 7, 2015, pet. denied) (mem. op.) ("An officer's good faith is not rebutted merely by evidence that he violated the law or department policy in making his response."); *Royal v. Harris County*, No. 14-08-00551-CV, 2010 WL 5610604, at *9 (Tex. App.—Houston [14th Dist.] Feb. 23, 2010, pet. denied) (mem. op.) (same). The test for official immunity is not whether the official acted negligently; rather, it is whether no reasonable officer in the same or similar circumstances could have believed that Deputy Solis's actions were justified. *See Chambers*, 883 S.W.2d at 655; *Cameron County v. Sossi*, No. 13-21-00180-CV, 2022 WL 4374994, at *6 (Tex. App.—Corpus Christi–Edinburg Sept. 22, 2022, no pet.) (mem. op.); *Belle*, 297 S.W.3d at 531.

Intervenors bore the burden to show that no reasonable officer in Deputy Solis's position could have thought the circumstances justified his actions. *Clark*, 38 S.W.3d at 581. They provided no evidence meeting this burden. Deputy Solis's deposition testimony does not show that he was plainly incompetent or that he knowingly violated the law, and his unsworn declaration shows that he evaluated both the need for his actions and the risks he undertook in making the decision to execute the u-turn. *See Riojas*, 640 S.W.3d at 539; *Ross*, 2021 WL 4304478, at *4-5; *Rodriguez*, 2020 WL 1486831, at *5-6. Appellees presented no evidence creating a genuine issue of material fact as to Deputy Solis's good faith. The official immunity defense is conclusively established on this record. Accordingly, Harris

22

County's immunity from suit is not waived under section 101.021, and the trial court erred in denying the county's plea to the jurisdiction as to the affirmative claims Intervenors asserted against the county. We sustain in part Harris County's sole issue.

## Conclusion

Because Harris County asserted an affirmative claim for monetary relief against Joshua, the county does not have immunity from Joshua's counterclaim germane to, connected to, and properly defensive to the claim asserted by Harris County, to the extent any recovery on Joshua's counterclaim will offset any potential recovery by the county.[10] However, Harris County retains its immunity from Joshua's damage claims to the extent his damages exceed an amount sufficient to offset the county's damages against him, and its immunity has not been waived in that regard. Further, Harris County's immunity from suit has not been waived as to the claims asserted by the Intervenors. We order the Intervenors' claims dismissed for lack of jurisdiction. Accordingly, we affirm in part, reverse and render in part, and remand to the trial court for further proceedings consistent with this opinion.

/s/    Kevin Jewell
       Justice

Panel consists of Justices Wise, Jewell, and Poissant (Poissant, J., dissenting).

---

[10] *See Reata*, 197 S.W.3d at 378.

23